*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| CONDELL WOODSON, | : | |
| | : | Civil Action No. 13-4036 (SDW) |
| Petitioner, | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| CHARLES E. WARREN, et al. | : | |
| | : | |
| Respondents. | : | |
| | : | |

**WIGENTON**, District Judge:

Presently before the Court is the amended petition for a writ of habeas corpus of Condell Woodson ("Petitioner") brought pursuant to 28 U.S.C. § 2254 challenging Petitioner's state court conviction (ECF No. 7). The State has filed a response to the petition (ECF No. 11), to which Petitioner has replied (ECF No. 12). For the following reasons, this Court will dismiss the petition with prejudice as time barred and will deny Petitioner a certificate of appealability.

**I. BACKGROUND**

In its opinion affirming Petitioner's conviction, the Superior Court of New Jersey – Appellate Division provided the following summary of the facts underlying this case:

> [Petitioner] entered into a plea agreement with the State. He pled guilty to: the felony murder of Orange Police Officer Joyce Carnegie while she was acting in the performance of her duties [in violation of N.J. Stat. Ann. § 2C:11-3(a)(3)]; three counts of first degree armed robbery [in violation of N.J. Stat. Ann. § 2C:15-1(a)(2)]; two counts of second degree possession of a firearm (Intratec "TEC 9" assault firearm) for an unlawful purpose [in violation of N.J. Stat. Ann. § 2C:39-4(a); and fourth degree unlawful possession of hollow point bullets [in violation of N.J. Stat. Ann. § 2C:39-3(f)]. The

State recommended: the dismissal of three unrelated charges, and that all sentences run concurrent to the mandatory life sentence for the murder of the police officer.

Upon entering the plea, [Petitioner] testified that the contents of a written statement that he had given to Orange Police Officers accurately described his conduct on April 8, 1999. [Petitioner] admitted in the statement that at around 8:00 p.m. in the area of Scotland Road in Orange, he "put a gun on" two young men and robbed them of money and jewelry. He also admitted that ten minutes later, he robbed three young men of "gold and some more money" by threatening them with a weapon, a "Tec 9." Sometime later he committed a third armed robbery of two men who were the same height as [Petitioner]. In that robbery, he used the Tec 9 and obtained "more jewelry and some more money."

[Petitioner]'s statement indicated that he obtained the Tec 9 from "a kid down South [in Georgia]." He also admitted that he was about to commit a fourth armed robbery of a man who had just exited a liquor store. This robbery was foiled by Officer Carnegie who drove by in a squad car. According to [Petitioner],

> [Officer Carnegie] pulled in front of us. And see – so I went behind the car to cross the street and the [intended victim] went into the projects. So then that's when I bounced from over there and I crossed the 280 highway on the bridge. And then I seen the cop car stop at the light, so I turned up . . . I seen - - a car pulled up. . . . And after that, [Officer Carnegie] jumped on my back. . . .
>
> While she was trying to bring me back to the [squad car], I was trying to throw the gun. But then after that, the gun went off.

According to [Petitioner], he ran from the scene leaving the wounded officer there. He threw the Tec 9 away in "somebody's backyard."

Prior to sentencing, [Petitioner] moved to withdraw his plea. [The trial judge] held a hearing. At the hearing, [Petitioner] spoke at length about the basis for his motion. He asserted that his written statement, which provided the factual basis for his plea, was untrue.

2

> He contended that law enforcement authorities coerced him into giving such a statement by threats of physical harm. He denied committing any crimes the evening of April 8, 1999.
>
> At the hearing, the State introduced a letter written by [Petitioner] while incarcerated. The letter, which was addressed to one of [Petitioner]'s friends . . . fully admitted that [Petitioner] committed the robberies and shot Officer Carnegie. The letter also entreated [the friend] to kill the witnesses against [Petitioner]. This letter had been intercepted by correctional authorities.
>
> [The trial judge] denied [Petitioner]'s motion to retract his guilty plea. Subsequently, the judge imposed the following sentences [on June 30, 1999]: a mandatory term of life imprisonment with no possibility of parole for the murder of Officer Carnegie, and concurrent terms aggregating five years imprisonment with a two-and-a-half year period of parole ineligibility on the other [charges]. This sentence is consistent with the terms of the plea agreement.

(Document 4 attached to ECF No. 11 at 1-3).

Petitioner appealed his conviction. On March 4, 2002, the New Jersey Appellate Division affirmed Petitioner's conviction and sentence, finding that Petitioner had voluntarily entered his plea, that the trial court had not erred in denying Petitioner's motion to withdraw his guilty plea, and that there was no impropriety in the seizing and admission of Petitioner's letter during the hearing. (*Id.* at 3-5). Petitioner's petition for certification was thereafter denied by the New Jersey Supreme Court on June 4, 2002. (Document 5 attached to ECF No. 11).

Petitioner thereafter filed a petition for post-conviction relief. Although Petitioner asserted in his letter request to reopen this matter that he filed this petition in July 2002 (ECF No. 6), this does not appear to be the case. Petitioner himself has submitted a document which indicates that in July 2002 he instead sent a letter to the Public Defender's Office asking them to file a petition on his behalf. (Document 1 attached to ECF No. 12). Petitioner's actual petition

3

for post-conviction relief appears to have been signed and sworn before a notary on or about October 21, 2003.  (Document 6 attached to ECF No. 11).  That Petition was not marked received by the state court clerk until May 1, 2006.  (*Id.*).  According to Petitioner's amended PCR petition, however, Petitioner did not attempt to file his first PCR petition until November 7, 2003.  (Document 7 attached to ECF No. 11 at 4).  The State ultimately agreed with this assertion, and the PCR Court concluded in its opinion denying relief that Petitioner first filed his PCR petition on or about November 7, 2003.  (Document 8 attached to ECF No. 11 at 2).

The PCR judge denied Petitioner's PCR petition on January 26, 2009.  (Document 9 attached to ECF No. 11).  Petitioner appealed, and the Appellate Division affirmed on February 16, 2011, concluding that Petitioner had failed to show ineffective assistance of counsel, that Petitioner's claim of newly discovered evidence did not present any new evidence in so much as it related to a witness who had been known at the time of the plea, and that Petitioner had failed to provide any affidavit confirming that the witness in question herself claimed that she had identified the wrong person, as opposed to the affidavits of two other people claiming she had told them that Petitioner wasn't the shooter which Petitioner did submit.  (Document 10 attached to ECF No. 11 at 2-13).  The New Jersey Supreme Court thereafter denied Petitioner's petition for certification on October 12, 2012.  (Document 12 attached to ECF No. 11).  Petitioner thereafter filed his initial petition for a writ of habeas corpus, which he dated June 21, 2013. (ECF No. 1).

**II. DISCUSSION**

**A. Legal Standard**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013); *see also Parker v. Matthews*, --- U.S. ---, ---,132 S. Ct. 2148, 2151 (2012). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta" of the opinions of the United States Supreme Court. *See Woods v. Donald*, --- U.S. ---, ---, 125 S. Ct. 1372, 1376 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no

5

reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

**B.   Analysis**

**1.   Petitioner's petition for a writ of habeas corpus is clearly time barred**

The State argues that this petition should be dismissed as time barred. Petitions for a writ of habeas corpus brought pursuant to § 2254 are subject to a one year statute of limitations. *Ross v. Varano*, 712 F.3d 784, 798 (3d Cir. 2013). The statute of limitations, in cases such as this one, runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" including the ninety day period for the filing of a petition for certiorari before the Supreme Court. *Id.* This statute of limitations, however, is automatically tolled by statute while a petitioner has a properly filed petition for post-conviction relief pending before the state courts. *See, e.g., Figueroa v. Buechele*, No. 15-1200, 2015 WL 1403829, at *2 (D.N.J. Mar. 25, 2015).

In this case, the New Jersey Supreme Court denied certification on Petitioner's direct appeal on June 4, 2002. Petitioner's conviction therefore became final ninety days later on September 2, 2002, when the time for filing a petition for certiorari expired. Petitioner's one year statute of limitations had therefore run as of September 2, 2003. As Petitioner's amended PCR petition and the PCR court's opinion denying PCR relief establish, Petitioner's first PCR Petition was not filed until November 2003, after the one year statute of limitations had run. Thus,

6

regardless of any statutory tolling, Petitioner's one year limitations period expired before he filed his first PCR petition, and this petition is untimely regardless of the fact that he later filed a PCR Petition. In any event, because Petitioner's PCR appeal became final on October 18, 2012, and because he did not file his habeas petition until at least June 21, 2013, Petitioner has exceeded the one year statute of limitations period by 312 days (66 days between September 2, 2003 and November 7, 2003, and 246 days between October 18, 2012, and June 21, 2013). Thus, Petitioner's petition for a writ of habeas corpus appears well and truly time barred absent some form of equitable tolling.

The question, then, is whether Petitioner is entitled to equitable tolling. Equitable tolling "is a remedy which should be invoked 'only sparingly.'" *United States v. Bass*, 268 F. App'x 196, 199 (3d Cir. 2008) (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)). To be entitled to equitable tolling, a petitioner must show "(1) that he faced 'extraordinary circumstances that stood in the way of timely filing,' and (2) that he exercised reasonable diligence" in pursuing his rights throughout the period to be tolled. *United States v. Johnson*, 590 F. App'x 176, 179 (3d Cir. 2014) (quoting *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011)). "There are no bright lines in determining whether equitable tolling is warranted in a given case." *Pabon*, 654 F.3d at 399. The courts should only permit tolling, however, "in the rare situation where it is demanded by sound legal principles as well as the interest of justice." *LaCava v. Kyler*, 398 F.3d 271, 275 (3d Cir. 2005).

To establish that he faced extraordinary circumstances, Petitioner must show either that he has been actively misled, that he was prevented from asserting his rights in some extraordinary way, that he timely asserted his rights in the wrong forum, or that the court misled him regarding

the steps he needed to take to preserve his claim. *See Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999); *see also Brinson v. Vaughn*, 398 F.3d 225, 230 (3d Cir.), *cert. denied*, 546 U.S. 957 (2005). That Petitioner or counsel miscalculated the time remaining on his limitations period without more does not constitute an extraordinary circumstance. *See Johnson v. Hendricks*, 314 F.3d 159, 163 (3d Cir. 2002). Ignorance of the law is likewise insufficient to excuse a late filing in the absence of further pertinent facts, even where the petitioner is incarcerated and acting pro se. *See United States v. Johnson*, 544 U.S. 295, 311 (2005); *see also Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001).

In his motion to reopen this matter, Petitioner argued only that his Petition should be permitted to proceed because he first tried to file a PCR petition in July of 2002, which he alleges was lost leading to him have to refile in October 2003. Petitioner, however, has provided no documentary evidence to support these contentions. Indeed, the documents Petitioner has provided instead show that Petitioner in July of 2002 mailed a letter to request the preparation of a PCR petition by the Public Defender. (Document 1 attached to ECF No. 12). Petitioner's letter clearly indicates that he had not filed a petition as of July 14, 2002, and expected that the Public Defender would eventually file one on his behalf. (*Id.*). The evidence before this Court indicates that Petitioner's first attempt at filing a petition did not actually occur until November 2003, more than a year later. Thus, Petitioner's assertion that his petition was lost in July 2002 is without support in the record, and Petitioner has thus not shown that he suffered exceptional circumstances on that basis.

Petitioner also asserts that a portion of the period between the denial of his final PCR appeal in October 2012 and the filing of his habeas petition should be tolled because it took several months

for the Public Defender to provide Petitioner with certain records. Although Petitioner claims this response took several months, the letters he submits show that the Public Defender's Office received Petitioner's request on January 31, 2013, and returned those records that they possessed to Petitioner just over a month later on March 6, 2013. (Document 2 attached to ECF No. 6 at 2). It is not clear that Petitioner, who was obviously familiar with his own case, could not prepare at least a basic habeas petition without these records, and in any event a short delay for the production of records by the Public Defender is hardly an "exceptional circumstance." Petitioner is thus not entitled to tolling on that basis. Because Petitioner's limitations period had expired long before this point, any tolling he could have received on this basis would have done him no good in any event.

In his reply brief, Petitioner also seeks to assert several additional claims in support of this Court's consideration of the merits of his habeas Petition. Petitioner presents several facts which he asserts would warrant tolling: that he was placed in administrative segregation between March 2010 and March 2012 after being found guilty of an administrative violation, that he was placed in a segregated unit in 2008 with limited interaction with the general population, and that a paralegal helping him asked for certain documents in preparing his habeas petition. As all of these events took place long after Petitioner's limitation period had expired as discussed above, they are of no help to Petitioner. In any event, none of these events, some of which are the result of Petitioner's own actions, constitute exceptional circumstances which would warrant tolling. *See, e.g., Jones*, 195 F.3d at 159.

In his reply brief, Petitioner also asserts that his petition should not be barred because he is actually innocent of the crimes charged, and that his claim that an eye witness who gave a partial

9

identification of him recanted to others amounts to newly available evidence which establishes his innocence. In *McQuiggan v. Perkins*, --- U.S. ---, ---, 133 S. Ct. 1924 (2013), the Supreme Court held that, where a Petitioner presents a convincing case of his actual innocence, he may use that innocence claim as a gateway to permit a Court to hear his claims on the merits despite being barred by the statute of limitations applicable to § 2254 petitions. *Id.* at 1936. In order to establish his entitlement to a gateway claim of actual innocence, however, a petitioner must do far more than assert actual innocence, he must show it by presenting "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 316 (1995)).

As the Third Circuit has explained, in order to make out a gateway claim of actual innocence, the petitioner must do more than merely claim actual innocence. A petitioner must instead show his innocence through "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Hubbard v. Pinchak*, 378 F.3d 333, 339-40 (3d Cir. 2004) (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)). It is for this reason that the Supreme Corut has observed that actual innocence claims are rarely successful, and should only be granted in the exceptional case where "evidence of innocence [is] so strong that a court cannot have confidence in the outcome of the trial" as "no reasonable juror" could have convicted the petitioner. *McQuiggin*, 133 S. Ct. at 1936. Indeed, the Third Circuit has noted that because a gateway actual innocence claim requires a "strong showing of actual innocence," such claims have "in virtually every case . . . been summarily rejected." *Hubbard*, 378 F.3d at 341 (quoting *Calderon v. Thompson*, 523 U.S. 538,

10

558-59 (1998)).

In this matter, Petitioner bases his actual innocence claim on his continued assertion, which he first raised in his motion to withdraw his guilty plea, that his statement to the police was coerced and that he is innocent, as well as the claim he raised on PCR that one of the eye witnesses who gave a partial identification of Petitioner told others that Petitioner was not the shooter. Petitioner's claim of his own innocence based on alleged coercion clearly does not arise out of "new reliable evidence" and instead is based solely on Petitioner's own assertions, which the trial court rightly rejected after Petitioner attempted to send a letter to a friend in which he once again admitted his guilt and requested that the friend kill the witnesses against him. *Hubbard*, 378 F.3d at 339-40. Petitioner's second claim, that a witness told others that Petitioner was not the shooter, is based not on an affidavit of the alleged eye-witness, but instead on affidavits Petitioner submitted to the PCR court of two other witnesses who allege she told *them* that Petitioner was not the shooter. Thus, Petitioner's claim is based on nothing more than hearsay, and the PCR courts appear to have been in the right to reject Petitioner's claim, especially in light of the fact that Petitioner knew the identity of the eye witness and could have questioned her and/or called her as a witness at the time of his motion to withdraw his plea.

In any event, even if this were not the case, Petitioner's allegation that this witness, who only partially identified Petitioner, changed her story would be insufficient to set forth a gateway claim of actual innocence. In this case, Petitioner not only confessed and gave a written statement to the police admitting his guilt in the robberies and shooting of the police officer, but also confirmed the accuracy of that statement while under oath during his guilty plea hearing. Petitioner also thereafter wrote a letter to a friend in which he again admitted his guilt and sought

11

to have the witnesses against him killed. Given this strong evidence of Petitioner's guilt, and the absence of any compelling evidence to support Petitioner's assertions of innocence, Petitioner has failed to provide new evidence which would lead this Court to lose confidence in the outcome of Petitioner's prosecution. This is especially true given the fact that several other witnesses also told police that Petitioner confessed his crimes to them and threatened to kill them if they spoke to police. (*See* Document 10 attached to ECF No. 11 at 9). The evidence of Petitioner's guilt, including his statement to the police admitting guilt, his admissions of guilt to others, his admission of guilt in the letter requesting that his friend attack the witnesses against him, and Petitioner's admissions in open court during the plea colloquy all lead this Court to conclude that there is no reason to doubt the outcome of Petitioner's prosecution. Petitioner's hearsay based claim of new evidence is unavailing and falls far short of leading this Court to doubt that a reasonable factfinder could have found Petitioner guilty. This Court thus must conclude that Petitioner has utterly failed to show his actual innocence, and is thus not entitled to use that as a gateway to proceed in the face of his failure to file his petition within the limitations period. *McQuiggan v. Perkins*, 133 S. Ct. at 1936; *Schlup*, 513 U.S. at 324; *Hubbard*, 378 F.3d at 339-40. This Court will therefore once again dismiss Petitioner's petition as time barred. Because Petitioner has had ample opportunity to present any arguments as to the time bar issue, however, Petitioner's petition shall now be dismissed with prejudice.

### III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. §2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has

"made a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude that the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because jurists of reason could not disagree with this Court's conclusion that Petitioner's habeas petition is well and truly time barred, nor with this Court's conclusions that Petitioner is not entitled to equitable tolling and has failed to make out a gateway claim of actual innocence, Petitioner's habeas petition is inadequate to deserve encouragement to proceed further. As a result, this Court will deny Petitioner a certificate of appealability.

**IV. CONCLUSION**

For the reasons stated above, Petitioner's petition for a writ of habeas corpus is DISMISSED WITH PREJUDICE as time barred and Petitioner is DENIED a certificate of appealability. An appropriate order follows.

Dated: July 5, 2016  *s/ Susan D. Wigenton*
Hon. Susan D. Wigenton,
United States District Judge